David B. Higginbottom City Attorney Frostproof
QUESTION:
Is a municipality authorized by law to require abutting landowners who request vacation of a public street to prove a revesionary interest in the property and pay for the proportionate costs of an appraisal and for the proportionate appraised value of such property interest as conditions to the vacation?
SUMMARY:
A municipality possesses no authority under the Municipal Home Rule Powers Act to require property owners whose land abuts a dedicated public street to `prove a reversionary interest' or any other property interest or property right in the streetbed prior to and as a condition to the vacation of such street. The determination and adjudication of property rights is a judicial function which may not be exercised by the legislative branches of government; hence any such exercise by a municipality does not constitute a lawful exercise of a municipal governmental power for a municipal purpose. In addition, while the vacation of streets in the public interest or when the streets are no longer required for public use is a legislative function which may be performed by a municipality, a municipality possesses neither statutory nor constitutional authority to exact payment for or otherwise interfere with the property rights of landowners whose property abuts a public street as conditions to or in exchange for the exercise of its power to vacate streets no longer required for public use.
Your letter advises that the Frostproof City Council has adopted a `motion' which reads as follows:
 [I]n the future a qualified appraiser [shall] be used by the city to set the value of a street (to become property) when requested for closure. The person or persons making the request would have to bear the expense of the appraisal and proof of a reversionary clause. They would be notified and bills [sic] for the appraised property value before actual closing of the street could take place. Payment to be made on date of actual closing.
Section 2(b), Art. VIII, State Const., provides in pertinent part:
 Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes
except as otherwise provided by law. (Emphasis supplied.)
Statutory implementation of the broad grant of home rule is provided by Ch. 166, F. S., the Municipal Home Rule Powers Act. Section 166.051(1), F. S., of that act states in relevant part that `municipalities . . . may exercise may power for municipalpurposes, except when expressly prohibited by law.' (Emphasis supplied.) Thus, it is clear that the only limitation upon the exercise of power by a municipality is that it must be exercised for a municipal purpose. State v. City of Sunrise, 354 So.2d 1206,1209 (Fla. 1977).
Although the phrase `municipal purposes' is not defined by the constitution, it is defined by s. 166.021(2), F. S., as `any activity or power which may be exercised by the state or its political subdivisions.' But see City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764, 765-769 (Fla. 1974) (Dekle, J., concurring), in which Justice Dekle observed:
 It is not the definition of municipal purposes found in . . . s. 166.021(2) that grants power to the municipality . . . but rather the provision of . . . s. 166.021(1) which expressly empowers municipalities to `exercise any power for municipal purposes, except when expressly prohibited by law.'
It is a fundamental principal in this state that the determination and adjudication of property rights is a judicial function which cannot be performed by the Legislature. Hillsborough County v. Kensatt, 144 So. 393 (Fla. 1932); State Plant Board v. Smith,110 So.2d 401 (Fla. 1959); Daniels v. State Road Dept., 170 So.2d 846
(Fla. 1964). Legislation which constitutes an invasion of the province of the judiciary is invalid. Thursby v. Stewart,138 So. 742 (Fla. 1931); Simmons v. State, 36 So.2d 207 (Fla. 1948). Thus, while the vacation of streets is a legislative function which may be validly delegated to municipalities (see Sun Oil Company v. Gerstein, 206 So.2d 439, 440 (3 D.C.A. Fla., 1968), AGO 075-171),no legislative body (whether state, county, or municipal) is authorized to invade private property rights or require abutting property owners to prove a reversionary or any other interest in real property as a condition to the vacation of a public street. Accordingly, the action taken by the Frostproof City Council does not constitute a municipal purpose; and, therefore, it is outside the scope of municipal home rule powers possessed by the municipality.
Moreover, under the general rule, the interest acquired in land by a municipal corporation for street purposes is held in trust for the benefit of all the public, regardless of whether the corporation owns the fee or has merely an interest therein. Sun Oil Company v. Gerstein, supra; 30 Am. Jur.2d Highways Streets andBridges s. 159. A municipality is empowered to vacate streets only when the vacation is in the public interest or when the street is no longer required for public use and convenience. 64 C.J.S.Municipal Corporations s. 1668. Consequently, in AGO 078-118, I noted, as a caveat, with respect to the vacation of county roads:
 [I]f the general public is using the roads and streets in question (including public service vehicles such as garbage trucks, police, fire or emergency vehicles), then the county should not close or vacate the roads or streets in question as such vacation would be injurious to the public welfare or violate individual property rights.
 Applying these principles to your inquiry, it is clear that the city council should not undertake to vacate any streets in the absence of a determination that the general public would benefit from the vacation or that such streets are no longer required for the public use and convenience.
 As to whether a municipality is authorized to exact charges or payments from abutting landowners as a condition to or in exchange for the vacation of a public street, it is necessary to analyze the property interests possessed by the public and the abutting or adjoining landowners in public streets.
 Recently, in AGO's 078-63, 078-88, and 078-118, I examined the elements and effect of the dedication of property for public use. There are two basic requirements to the existence of a valid dedication to the public. First, there must be a clearly manifested intention by the owner of the property to dedicate it to public use. Second, the public, through its authorized agents, must clearly show its intent to accept the dedication. City of Miami v. Florida East Coast Railway Co., 84 So. 726 (Fla. 1920); Roe v. Kendrick, 200 So. 394 (Fla. 1941). An offer of dedication to the public may be accomplished by making and recording a plat and selling lots with reference thereto. See, e.g., Florida East Coast Railway Co. v. Worley, 38 So. 618 (Fla. 1905); Miami Beach v. Undercliff Realty and Investment Co., 21 So.2d 783 (Fla. 1945); and see, s. 177.081, F. S.
 However the dedication to the public is accomplished, it is clear that such dedication does not have the effect of transferring legal title from the grantor to the public. To the contrary, the fee remains in the grantor (or his grantees) while the public acquires only a right of easement in trust, so long as the dedicated land is used for the intended purpose of the dedication. Attorney General Opinion 078-118. Unless otherwise specifically provided in the conveyance, the legal title of the grantor in the dedicated property passes to the grantees of those lots sold with reference to a plat, which lots abut the dedicated streets. Their title extends to the center of the street subject to the public easement. Walker v. Pollack, 74 So.2d 886 (Fla. 1954); Smith v. Horn, 70 So. 435 (Fla. 1915); New Fort Pierce Hotel Co. v. Phoenix Tax Title Corp., 171 So. 525 (Fla. 1936); United States v. 16.33 Acres of Land in County of Dade, 342 So.2d 476, 480 (Fla. 1977); cf. Emerald Equities v. Hutton, 357 So.2d 1071 (2 D.C.A. Fla., 1978). Therefore, a street in which the public has only an easement when properly vacated ceases to be a street; the abutting landowners continue to hold fee simple title to the center of the vacated roadbed unencumbered by the easement. Smith v. Horn, supra; Robbins v. White, 42 So. 841, 843-844 (Fla. 1907); AGO 078-118.
 See also s. 177.081(1), F. S., providing that every plat of a subdivision filed for record must contain a dedication by the developer; s. 177.081(2), F. S., providing that all streets, rights-of-way, and public areas shown on plats approved by the affected local governments shall be deemed dedicated to the public for the uses and purposes stated in such plat, unless otherwise stated therein by the dedicator; s. 177.085(1), F. S., providing that when any landowner subdivides his land and dedicates streets or roadways on the plat but reserves unto the dedicator the reversionary interests in the dedicated streets or roadways, and thereafter conveys abutting lots, such conveyance carries with it the reversionary interest in the abutting street to the center line, unless the landowner clearly provides otherwise in the conveyance; and s. 177.085(2), F. S., providing that prior holders of any interest in the reversionary rights in the streets and roads in recorded plats of subdivided lots, other than the owners of abutting lots, `shall have 1 year from July 1, 1972, to institute suit . . . to establish or enforce the right,' and that, if no such action is instituted within that time, any right, title, or interest and all right of reversion shall be barred and unenforceable.
 With regard to the instant inquiry, therefore, it is apparent that the Frostproof City Council does not `own' streets which have been dedicated to public use. Cf. AGO 078-118 in which this office concluded that a county was not authorized to convey or transfer ownership and control of dedicated streets to a `homeowners association' since the county possessed no legal title in the property which it could convey or transfer. Under such circumstances, there would appear to be no legal basis upon which the city could require abutting fee owners to pay to secure property interests which they already possess. See McQuillin Municipal Corporations s. 30.189, at 123 (3rd rev. ed. 1977), stating: `A municipality is not entitled to compensation for loss of a public easement in streets in which it does not own the fee.' Accord: Lockwood 
Strickland Co. v. City of Chicago, 117 N.E. 81, 82 (Ill. 1917), in which the court held, among other things:
 [I]t would be beyond the power of the city to grant or convey to a private person or corporation the ground embraced in a vacated street or alley. Whether a city owns the fee in an alley or merely an easement, when it is vacated because no longer needed for public use, the law disposes of the reversionary interest, and the reversionary rights cannot be granted or conveyed by the city. . . . Whether the alley was no longer needed for public use, and whether the public interest would be subserved by its vacation, could not be made to depend on how much the city could get for its action. The legislative powers of a city must be exercised for the public benefit, but that does not authorize a municipality to sell or bargain legislation as a means of obtaining revenue.
The State Constitution provides that all natural persons shall have the inalienable right `to acquire, possess and protect property . . . .' Section 2, Art. I, State Const. Additionally, s. 9, Art. I, State Const., provides that no person `shall be deprived of . . . property without due process of law . . . .' Section 6, Art. X, State Const., states that `[n]o private property shall be taken except for a public purpose and with full compensation therefor . . . .' Thus, the acquisition, possession, enjoyment, use, and alienation of property and property rights are controlled by constitutional law and the common law. Moreover, the term `property' for purposes of the above-cited constitutional provisions includes more than the abutting landowner's fee simple title. As stated in Seldon v. City of Jacksonville, 10 So. 457,459 (Fla. 1891):
 There is incident to abutting property, or its ownership, even where the abutter's fee or title does not extend to the middle of the street, but only to its boundary, certain property rights which the public generally do not possess. They are the right of egress and ingress from and to the lot by the way of the street, and the right of light and air which the street affords. Viewing property to be not the mere corporal subject of ownership, but as being all the rights legally incidental to the ownership of such subject, which rights are generally said to be those of user, exclusion, and disposition, or the right to use, possess, and dispose of, . . . we are satisfied that the rights just mentioned are within the meaning of the word `property,' as it is used in this constitutional provision. [10 So. 457, 459 (1891) (construing s. 12, Declar. Rts., State Const. 1885, in part a predecessor of s. 6, Art. X, State Const.).]
See also Lutterloh v. Mayor and Council of Town of Cedar Keys,15 Fla. 306, 308 (1875); City of Miami v. East Coast Ry. Co.,84 So. 726, 729 (Fla. 1920); McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1956); Monell v. Golfview Road Association, 359 So.2d 2 (4 D.C.A. Fla., 1978).
Accordingly, it has been held that the rights of abutting or adjacent purchasers depend on principles of law applicable to private property rather than public dedication since these rights depend upon a `private easement implied from sale with reference to a plat showing streets [etc.]' rather than upon any dedication to the public generally. Burnham v. Davis Islands, Inc.,87 So.2d 97, 100 (Fla. 1956). An abutting landowner may be entitled to compensation from a public body when it vacates a public street for consequent loss of access to such landowner's property on the theory that a property right has been taken without compensation.See Pinellas County v. Austin, 323 So.2d 6, 8 (2 D.C.A. Fla., 1975). If follows, then, that the several property interests of abutting landowners are subject to constitutional protection. Clearly the attempt by a municipality to usurp private property rights or property interests or to barter or sell such property rights as conditions to or in exchange for the exercise of its legislative power to vacate streets no longer required for public use, does not constitute a municipal purpose and is outside the scope of municipal home rule powers.
Prepared by: Patricia R. Gleason, Assistant Attorney General