COPE, Judge.
Dolphins Plus, Inc. appeals an order directing it to remove two forty-five-foot docks, or reduce their length. We conclude that this ruling was not required by an earlier final judgment between the parties, and accordingly reverse.
Defendant-appellant Dolphins Plus, Inc. owns land on a 120-foot by 190-foot boat basin in a subdivision in Key Largo, Florida. If the boat basin is visualized as a page in a book, Dolphins Plus owns the land at the top of the page and one-third of the distance down each side of the page. A boat canal enters at the middle of the right-hand side of the page. The remaining property around the boat basin is owned by others. Plaintiffs-appellees (“the neighbors”) are property owners in the subdivision, whose lots are on, or near, the boat basin.
In 1990, Dolphins Plus built a chain link fence across its portion of the boat basin in order to create a stranding pen for sick or injured marine mammals, such as whales or dolphins.[1] This permanently fenced off the upper third of the boat basin. Dolphins Plus also erected a tent to provide shade for mammals housed in the fenced enclosure.
The neighbors obtained a judgment requiring removal of the chain link fence. The trial court ruled, and this court agreed, that the chain link fence violated the applicable declaration of restrictions for the subdivision. “It is clear from the language in the plat that only those structures which are consistent with the mooring and/or docking of boats are permissible. Thus, a fence erected to serve as a stranding pen for ill or injured mammals is not consistent with such usage.” Dolphins Plus, Inc. v. Hobdy, 650 So.2d at 214.
The present controversy arises out of another provision of the original judgment, which authorized Dolphins Plus to use the boat basin for a temporary stranding pen. The judgment states:
2. The Court further finds that standard and usual boat basin structures such as a dock, which could be converted into something that could retain a stranded marine mammal on a temporary basis, would be allowed provided a) the structure did not extend more than eight (8) ft. from the seawall; and b) the inherent nature of the boat basin is not changed or altered.
(Emphasis added). This provision was satisfactory to the neighbors.
Soon after the parties’ 1995 appeal, Dolphins Plus built two forty-five foot docks in the boat basin. These were in the approximate location of the original chain link fence. Again visualizing the boat basin as the page of a book, one dock extends from the left-hand side toward the center, and the other from the right-hand side toward the center. There is a gap of thirty feet of open water between the ends of the two docks.
The two new docks each had a chain link fence below the water line. At the thirty-foot gap between the ends of the two docks, there was a submerged chain link fence gate which could be closed. Dolphins Plus stated that the reason for the below-water chain link fence and gate was to prevent weeds from entering its part of the boat basin. *577 Dolphins Plus again erected a tent over its portion of the basin.
The neighbors returned to court to enforce the original judgment. The neighbors contended that the new docks were simply a disguised permanent animal pen, ereeted in violation of the earlier judgment. The neighbors argued that the docks’ location constituted an impediment to navigation. The neighbors asserted that paragraph two of the original judgment limited any Dolphins Plus dock in the boat basin to a length of no more than eight feet, and requested enforcement of that limit.
Dolphins Plus replied that it had obtained permits from Monroe County for the construction of the docks. As a condition of obtaining the permits, Dolphins Plus agreed that the boat basin could not be used for a stranding pen, on either a permanent or temporary basis. During the pendency of proceedings below, Dolphins Plus removed the chain link fence, gate, and tent.
The successor judge accepted the neighbors’ interpretation of the original judgment, and ruled that under paragraph two, Dolphins Plus could not build a dock in the boat basin in excess of eight feet in length. The court ordered the docks to be reduced to that length, or removed. Dolphins Plus has appealed.
It is our view that the original judgment is not controlling on the question now before us. The issue at stake in the original litigation was whether Dolphins Plus could enclose a portion of the boat basin with a chain link fence in order to create a stranding pen for sick or injured marine mammals. The judgment precluded the creation of any permanent pen and required the removal of the chain link fence. Dolphins Plus had not built any dockage in the boat basin, and the terms and conditions under which conventional dockage could be installed was not an issue placed before the court.
It is true that paragraph two of the original judgment authorized Dolphins Plus to use the boat basin for a temporary stranding pen when needed. The trial court authorized Dolphins Plus to build two small structures in the basin, not exceeding eight feet in length, between which Dolphins Plus could erect a temporary fence when a short-term stranding pen was needed. The judgment indicated that such structures could be eight foot docks, or could be other appropriate boat basin structures. As we view the matter, the intent here was to describe relatively small permanent structures which would fit in with the general appearance and use of the boat basin, the function of which would be to provide attachment points for temporary fencing when needed.
As the successor judge noted, all of the other boat basins in this subdivision have docks longer than eight feet. Since the deed restrictions allow customary boat basin uses, see Dolphins Plus, Inc. v. Hobdy, 650 So.2d at 214, restriction of Dolphins Plus to an eight-foot dock length would be a more severe restriction than that found in any other boat basin in the subdivision, and would be contrary to the deed restriction which allows customary boat basin uses. See id.
We conclude that the length of conventional docks was not an issue raised or addressed in the earlier litigation between the parties, nor should it have been. Dolphins Plus had built a fence, not docks, and the eight foot limitation addressed the size of structure which could be used as an anchor point for temporary fencing. That being so, Dolphins Plus was not limited to an eight foot length for ordinary docks. The order now before us must be reversed and the cause remanded for further proceedings. See ICC Chem. Corp. v. Freeman, 640 So.2d 92, 93 (Fla. 3d DCA 1994).
We note that in addition to the question of compliance with the original judgment, the neighbors also argued below that the length and location of these docks interferes with navigation in the boat basin. The successor judge did not reach this issue because he found the original judgment to be dispositive. We therefore return the matter to the trial court for consideration of the neighbors’ other objections to the two docks.
Reversed and remanded for further pro *578 ceedings consistent herewith.[2]
SHEVIN, J., concurs.
GODERICH, J., dissents in part, and concurs in part.

. Dolphins Plus obtained a lease of the basin bottom from the heirs of the subdivision developer. See Dolphins Plus, Inc. v. Hobdy, 650 So.2d 213, 214 (Fla. 3d DCA 1995).

. Since the order for removal of the docks is reversed, we also reverse the portion of the order determining that the neighbors are entitled to attorney’s fees, and express no view on the parties’ respective contentions on that issue.